UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| KAMLESH BANGA,<br><br>             Plaintiff,<br><br>    vs.<br><br>EXPERIAN INFORMATION SOLUTIONS,<br>INC., and DOES 1 through 10 inclusive,<br><br>             Defendants. | Case No:  C 09-04867 SBA<br><br>**ORDER GRANTING MOTION<br>FOR SUMMARY JUDGMENT**<br><br>Docket 91, 117 |

Plaintiff Kamlesh Banga ("Plaintiff") brings the instant action against Defendant Experian Information Solutions ("Experian") alleging violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code § 1785.1, et seq., and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.  The parties are presently before the Court on Experian's motion for summary judgment.  Dkt. 91.  Plaintiff opposes the motion.  Dkt. 105.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS Experian's motion, for the reasons stated below.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.    **BACKGROUND**

### A.    **Experian and the Credit Reporting Process**

Experian operates a consumer credit reporting agency under the guidelines of the FCRA.  Centanni Decl. ¶ 4, Dkt. 91-4.  Experian gathers credit and public record information originated by others and makes the information available to parties engaged in credit related transactions.  Id.  Experian stores and furnishes credit and public record information as allowed by federal and state law.  Id.  Furnishers of information (i.e.,

creditors) report account information to Experian called "trade lines," which consist of data such as account number, account status, payment information, and balance information.  Id. Along with the trade lines, creditors report certain consumer identifying information associated with the trade line.  Id.

A "subscriber report" or "credit report" is a disclosure of credit information to a credit grantor, insurer, or employer for the purpose of evaluating a consumer's credit. Centanni Decl. ¶ 6.  In contrast, when a consumer seeks access to his or her credit information directly from a credit reporting agency, the resulting document is called a "consumer file disclosure" or "consumer disclosure."  Id.

Each time an Experian subscriber requests access to a consumer's credit history, an "inquiry" message appears on that consumer's credit profile.  Centanni Decl. ¶ 7. Subscribers may request access to a consumer's file for a variety of purposes.  Id. For example, a subscriber may access a consumer's file if a consumer has made an application for credit.  Id.  Subscribers also may access a file to review credit information that they are currently reporting about a consumer.  Id.  Experian encourages consumers to review their credit files, including the "inquiries" section, and to contact Experian and file a dispute or request an investigation of items they believe are inaccurate.  Id.

When a consumer's credit report is accessed by a third-party, Experian posts an inquiry detailing the date and nature of the inquiry.  Centanni Decl. ¶ 8.  There are two "general types" of inquiries: (1) those resulting in actions initiated by the consumer, such as an application or inquiry for extension of credit, which are displayed on credit reports to third parties (often referred to as "hard" inquiries); and (2) those not initiated by a consumer, such as account reviews and pre-screen inquires (often referred to as "soft" inquires).  Id.

A "hard inquiry" is displayed as part of a consumer's credit report when "the report is requested by a third-party, and is generally the result of action initiated by the consumer or for other permissible purposes."  Centanni Decl. ¶ 9.  Because hard inquiries can be viewed by third parties who request a consumer's credit report, they can potentially be

taken into consideration in the lending process.  Id.  A "soft inquiry" is an inquiry that appears only to the consumer when the consumer requests a copy of their credit file from Experian, and "is generally the result of when a third party [accesses] a consumer's credit file for a permissible purpose which is not directly initiated by the consumer."  Id. ¶ 10. Because soft inquiries cannot be viewed by third parties who request a consumer's credit report, they cannot be taken into consideration in the lending process.  Id.

### B.    Prior Lawsuits

On October 31, 2005, Plaintiff brought an action against Experian entitled Banga v. Experian Information Solutions, C 05-04417-MMC.  See Def.'s RJN, Exh. A.  In that action, Plaintiff alleged that Experian impermissibly provided creditors with access to her credit report for "account review" purposes after Plaintiff had closed her account with those creditors in violation of the FCRA and CCRAA.  Id.  Plaintiff also alleged that Experian impermissibly sold her credit report to creditors for promotional purposes after Plaintiff opted out of receiving pre-approved offers of credit in violation of the FCRA.  Id.  In April 2007, the parties entered into a written Settlement Agreement.  Klimkowski Decl. ¶ 6, Dkt. 91-1.  On April 25, 2007, the action was dismissed with prejudice.  Def.'s RJN, Exh. B.

On August 29, 2008, Plaintiff brought another action against Experian entitled Banga v. Experian Information Solutions, et al., C 08-04147-SBA.  Def.'s RJN, Exh. C.  In that action, Plaintiff alleged, among other things, that Experian violated the FCRA, the CCRAA, and California Business and Professions Code § 17200, et seq. (the "UCL").  Id. Specifically, Plaintiff alleged that Experian impermissibly provided creditors with access to her credit report for "account review" purposes after Plaintiff had closed her account with those creditors in violation of the FCRA, the CCRAA, and the UCL.  Def.'s RJN, Exh. D. Plaintiff also alleged that Experian impermissibly sold her credit report to creditors for promotional purposes after Plaintiff opted out of receiving pre-approved offers of credit in violation of the FCRA, the CCRAA, and the UCL.  Id.  On March 17, 2010, the Court granted summary judgment in favor of Experian.  Def.'s RJN, Exh. F.  On May 24, 2012, the Ninth Circuit affirmed the Court's summary judgment order.  See Banga v. Experian

Information Solutions, Inc., 473 Fed.Appx. 699 (9th Cir. 2012).

### C.     Current Lawsuit

On October 13, 2009, Plaintiff commenced the instant action against Experian.  See Compl., Dkt. 1.  On April 1, 2013, Plaintiff filed a first amended complaint ("FAC").  See FAC, Dkt. 50.  The FAC alleges three claims for relief styled as follows:  (1) "Experian's Continuing Willful/Negligent Wrongful Distribution of Plaintiff's Credit Report"; (2) "Experian's Willful Misuse of Plaintiff's Consumer Credit File Data"; and (3) "Experian's Willful/Negligent Sale of Plaintiff's Credit Report for Promotional Purposes."  FAC ¶¶ 14-46.

Plaintiff's first claim for relief alleges that Experian willfully and negligently violated the FCRA and the CCRAA by distributing her credit report to third parties for an impermissible purpose.  See FAC ¶¶ 15-35.  Specifically, Plaintiff asserts that Experian unlawfully distributed her credit report to First USA for "account review or unknown purposes" on numerous occasions from August 2004 to December 1, 2007 after being notified that Plaintiff's credit card account with First USA had been closed.  Id. ¶¶ 15-32, 35.  Plaintiff further alleges that Experian unlawfully distributed her credit report to American Express in August 2009 and June 2012 for "account review or unknown purposes" when she did not have an "active" account with American Express.  Id. ¶¶ 33-35.

Plaintiff's second claim for relief alleges that Experian violated the FCRA and the CCRAA by "improperly ma[king] inquiries into [her] credit file and misus[ing] the credit file data contained in [her] credit report on 7/06/07, 3/26/07, 11/03/08, 3/18/08, 3/14/08, 12/08/06, 01/08/09, and 3/03/09."  FAC ¶¶ 38, 40.  In addition, Plaintiff alleges that Experian violated the FCRA and the CCRAA by failing to include in her credit reports inquiries into her credit file conducted by Experian on "7/06/07, 3/26/07, 11/03/08, 03/18/08, 03/14/08, 12/08/06, 01/08/09, and 03/03/09."  Id. ¶¶ 39-40

Plaintiff's third claim for relief alleges that Experian violated the FCRA and the CCRAA by selling her credit report to LowerMyBills.com for promotional purposes in December 2008 after she elected to exclude her name from "all pre-approved credit offers

1  mailing lists by credit grantors."  See FAC ¶¶ 42-45.  According to Plaintiff, Experian

2  willfully violated the FCRA and the CCRAA by failing to make any effort to verify that she

3  had elected to exclude her name from all pre-approved "credit offers mailing lists by

4  creditor grantors."  Id. ¶ 45.

5  ## II.    DISCUSSION

6  ### A.    Requests for Judicial Notice

7  Experian and Plaintiff have each filed a request for judicial notice under Rule 201 of

8  the Federal Rules of Evidence requesting the Court take judicial notice of various

9  documents filed in other federal court actions.  See Dkt. 92, 101.  Plaintiff also requests the

10 Court take judicial notice of a letter written by First USA Bank/Bank One dated July 5,

11 2004 for the purpose of taking notice of the truth of the contents of this document.  Dkt.

12 101.  Plaintiff does not object to Experian's request for judicial notice, "so long as judicial

13 notice extends only to the existence of the document[s] and not to Defendant's

14 interpretation of the document[s]."  Dkt. 100.  Experian has not objected to Plaintiff's

15 request for judicial notice.

16 A court may judicially notice a fact that is not subject to reasonable dispute because

17 it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be

18 accurately and readily determined from sources whose accuracy cannot reasonably be

19 questioned."  Fed.R.Evid. 201(b).  A court may take judicial notice of court filings and

20 other matters of public record.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d

21 741, 746 n. 6 (9th Cir. 2006).  Accordingly, Experian's request for judicial notice is

22 GRANTED.  Plaintiff's request for judicial notice is GRANTED IN PART AND DENIED

23 IN PART.[1]  Plaintiff's request for judicial notice of court filings is granted, while her

24

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
   [1] The Court notes that it does not take judicial notice of the veracity of the facts
   presented in the documents subject to judicial notice.  See Lee v. City of Los Angeles, 250

26 F.3d 668, 690 (9th Cir. 2001) (a court may take judicial notice of another court's opinion,
   but not of the truth of the facts recited therein); M/V American Queen v. San Diego Marine

27 Constr. Corp., 708 F.2d 1483, 1491 (9th Cir. 1983) (a court may take judicial notice of
   court records, but it may not take judicial notice of the truth of the contents of all

28 documents found therein).

1  request for judicial notice of a letter written by First USA Bank/Bank One is denied.

2  Plaintiff has failed to demonstrate that the Court may take judicial notice of the truth of the

3  contents of this document under Rule 201(b).

4  **B.      Plaintiff's Motion for Leave to File Sur-Reply**

5  Plaintiff requests leave to file a sur-reply to respond to the following new matters

6  raised by Experian in its reply brief: (1) new legal arguments; (2) "several misstatements

7  and distortions of the factual record"; and (3) evidentiary objections.  Dkt. 117.  Experian

8  does not oppose the motion.  If a party raises a new argument or presents new evidence in a

9  reply brief, a court may consider these matters only if the adverse party is given an

10 opportunity to respond.  See El Pollo Loco v. Hashim, 316 F.3d 1032, 1040-1041 (9th Cir.

11 2003); Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996).  Having reviewed

12 Experian's reply and the proposed sur-reply filed by Plaintiff, the Court finds that a sur-

13 reply is appropriate.  Accordingly, Plaintiff's motion for leave to file a sur-reply is

14 GRANTED.  The Court will consider Plaintiff's sur-reply to the extent it presents

15 arguments responding to new matters raised for the first time in Experian's reply brief.

16 **C.      Experian's Evidentiary Objections**

17 Experian's reply memorandum contains a chart setting forth numerous evidentiary

18 objections.  Experian, without providing reasoned legal analysis, objects to various

19 statements made by Plaintiff in her declaration on the ground that such statements are

20 improper opinion testimony, inadmissible hearsay, irrelevant, lack foundation, and/or

21 violate the best evidence rule.  See Def.'s Reply at 12-14.  The Court declines to rule on

22 Experian's objections for two reasons.  First, the objections are conclusionary and provide

23 no reasoned legal analysis.  It is not the Court's role to make a party's arguments for them.

24 See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial

25 system relies on the advocates to inform the discussion and raise the issues to the court.").

26 Second, even if the Court were to consider the objected to statements in Plaintiff's

27 declaration, Experian is still entitled to summary judgment.  See Smith v. County of

28 Humboldt, 240 F.Supp.2d 1109, 1115-1116 (N.D. Cal. 2003) (Illston, J.) (refusing to rule

1  on the evidentiary objections in defendant's reply because "even if the evidence submitted

2  by plaintiff is considered by this Court, plaintiff fails to state a colorable claim"); BSD, Inc.

3  v. Equilon Enterprises, LLC, 2013 WL 942605, at *6 (N.D. Cal. 2013) (Armstrong, J.)

4  (same).

5        **D.    Experian's Motion for Summary Judgment**

6        Experian moves for summary judgment on Plaintiff's first, second, and third claims

7  for relief.  Experian contends that summary judgment is appropriate because there is no

8  genuine dispute as to any material fact and it is entitled to judgment as a matter of law.  In

9  addition, Experian contends that summary judgment is appropriate because Plaintiff's

10  claims are barred by the doctrine of res judicata.  Experian's arguments are discussed

11  below.

12        **1.    Legal Standard**

13        "A party may move for summary judgment, identifying each claim  . . . on which

14  summary judgment is sought.  The court shall grant summary judgment if the movant

15  shows that there is no genuine dispute as to any material fact and the movant is entitled to

16  judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A material fact is one that could affect

17  the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby,

18  Inc., 477 U.S. 242, 248 (1986).  For a dispute to be "genuine," a reasonable jury must be

19  able to return a verdict for the nonmoving party.  Id.

20        The moving party's burden on summary judgment depends on whether it bears the

21  burden of proof at trial with respect to the claim or defense at issue.  When, as here, the

22  nonmoving party bears the burden of proof at trial, the moving party need only point out

23  through argument that the nonmoving party does not have enough evidence of an essential

24  element of its claim to carry its ultimate burden of persuasion at trial.  Celotex Corp. v.

25  Catrett, 477 U.S. 317, 325 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir.

26  2001); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th Cir. 2000).

27  Summary judgment for a defendant is appropriate when the plaintiff fails to make a

28  showing sufficient to establish the existence of an element essential to its case, and on

which it will bear the burden of proof at trial.  <u>Cleveland v. Policy Management Sys. Corp.</u>, 526 U.S. 795, 805-806 (1999).

Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").  A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A).

To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, <u>Anderson</u>, 477 U.S. at 252, and "do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In fact, the nonmoving party must come forward with affirmative evidence from which a jury could reasonably render a verdict in the nonmoving party's favor.  <u>Anderson</u>, 477 U.S. at 252, 257.  In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, the evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in its favor.  <u>Id.</u> at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  <u>Dias v. Nationwide Life Ins. Co.</u>, 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010).

To establish a genuine dispute of material fact, the nonmoving party must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient.  <u>Galen v. County of Los Angeles</u>, 477 F.3d 652, 658 (9th Cir. 2007); <u>see</u> <u>also</u> <u>F.T.C. v. Stefanchik</u>, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary

judgment.").  Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment.  <u>Anderson</u>, 477 U.S. at 249-250 (citations omitted).

It is not the court's task "to scour the record in search of a genuine issue of triable fact."  <u>Keenan v. Allan</u>, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel has an obligation to lay out their support clearly.  <u>Carmen v. San Francisco Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found."  <u>Id.</u>  The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense.  <u>Id.</u>

### 2.    The Merits of Plaintiff's Claims for Relief

#### a.    Experian's Continuing Willful/Negligent Wrongful Distribution of Plaintiff's Credit Report

Experian contends that Plaintiff's first claim for relief fails as a matter of law because Experian did not furnish her credit report to third parties for an impermissible purpose.  Def.'s Mtn. at 10-12.  Specifically, Experian argues that it did not willfully or negligently violate the FCRA or CCRAA by providing Plaintiff's former creditors access to her credit information for account review purposes.[2]  <u>See</u> <u>id.</u> at 11-13.  In addition, Experian contends that summary judgment on Plaintiff's first claim for relief is appropriate because Plaintiff has no evidence of damages or causation.  <u>Id.</u> at 14-16.

#### i.    Willful Violations of the FCRA

The FCRA is a consumer protection statute which requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer

---

[2] Plaintiff alleges that Experian has violated both the FCRA and the CCRAA.  <u>See</u> FAC.  The CCRAA "mirrors" the provisions of the FCRA.  <u>See</u> <u>Guimond v. Trans Union Credit Info. Co.</u>, 45 F.3d 1329, 1335 (9th Cir. 1995).  Because the CCRAA is substantially based on the FCRA, judicial interpretation of the federal provisions is persuasive authority and entitled to substantial weight when interpreting the California provisions.  <u>Carvalho v. Equifax Information Services, LLC</u>, 629 F.3d 876, 889 (9th Cir. 2010).

credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).  The FCRA permits consumer reporting agencies to furnish credit reports only for certain statutorily enumerated purposes, § 1681b, and requires such agencies to "maintain reasonable procedures designed . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b," § 1681e.

Section 1681b provides the permissible purposes for which a person may use or obtain another individual's credit report.  15 U.S.C. § 1681b.  Under § 1681b, any consumer reporting agency may furnish a consumer report to a person which it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or *review . . . of an account* of, the consumer."  15 U.S.C. § 1681b(a)(3)(A) (emphasis added).

The FCRA imposes civil liability on any consumer reporting agency which is either negligent or willful in failing to comply with any requirement imposed under the FCRA.  15 U.S.C. §§ 1681n, 1681o.  To prove a willful violation, a consumer must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act.  Safeco Insurance Company of America v. Burr, 551 U.S. 47, 57 (2007).  An agency does not act in reckless disregard of the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the [agency] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Id. at 69.  If an agency's interpretation of the statutory text is not "objectively unreasonable," the interpretation falls short of "raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability."  Id. at 70.  To determine whether a defendant's reading was objectively reasonable, courts may consider the text of the Act or "guidance from the courts of appeal or the Federal Trade Commission."  Id.

For willful violations of the FCRA, prevailing consumers may recover actual or statutory damages, punitive damages and reasonable attorneys' fees.  15 U.S.C. § 1681n(a). In contrast, for negligent violations of the FCRA, a prevailing consumer may recover only actual damages and reasonable attorneys' fees and costs.  15 U.S.C. § 1681o.

Here, Plaintiff contends that Experian willfully violated the FCRA by furnishing her credit reports to First USA and American Express for "account review" purposes with the knowledge that her accounts with First USA and American Express were closed.  See Pl.'s Opp. at 7-11.[3]  Although not entirely clear, Plaintiff appears to argue that it was objectively unreasonable for Experian to interpret the FCRA as permitting a consumer reporting agency to furnish a consumer credit report to a creditor after the consumer had closed her account with that creditor.  See id. at 8-11.  Plaintiff, however, does not cite any statutory language or any guidance from the courts of appeal or the Federal Trade Commission that renders Experian's reading of the FCRA objectively unreasonable.

The Court finds that Experian is entitled to summary judgment on Plaintiff's claim for willful wrongful distribution of her credit report under the FCRA.  While Experian concedes that it furnished Plaintiff's credit reports to First USA for account review purposes after Plaintiff had closed her account with First USA, Experian's interpretation of the statute as permitting the furnishing of credit reports under such circumstances was not objectively unreasonable.  The plain language of the FCRA does not prohibit a consumer reporting agency from furnishing a consumer credit report to a former creditor for account review purposes.  The text of the FCRA does not distinguish between closed and open accounts.  See 15 U.S.C. § 1681b(a)(3)(A).  Nor has Plaintiff pointed to any circuit court authority demonstrating that Experian adopted an objectively unreasonable interpretation of the FCRA.  In fact, the Eleventh Circuit has held that it is not objectively unreasonable to interpret the FCRA as permitting the sale of a consumer credit report to a creditor for

---

[3] While Plaintiff alleges that Experian unlawfully distributed her credit report to First USA and American Express for "account review or unknown purposes," FAC ¶¶ 15-35, she does not argue that Experian unlawfully distributed her credit report to First USA or American Express for any purpose other than for account review.

"account review" purposes after the consumer has closed their account with that creditor. <u>See</u> <u>Levine v. World Financial Network Nat. Bank</u>, 554 F.3d 1314, 1318-1319 (11th Cir. 2009) (concluding that credit reporting agency did not willfully violate the FRCA when it sold a consumer report to a creditor for "account review" after consumer had closed his account with creditor; noting that the FCRA does not distinguish between closed and open accounts, that the statute's reference to "account" did not necessarily mean an open account, and nothing in the FCRA forbids the sale of reports for consumers whose accounts were closed).

To the extent Plaintiff contends that Experian willfully violated § 1681e(a) of the FCRA by failing to maintain reasonable procedures to avoid furnishing consumer credit reports for impermissible purposes, the Court rejects this argument.  Because it was not objectively unreasonable for Experian to furnish credit reports to a former creditor for "account review" purposes, Experian did not willfully violate the FCRA by failing to maintain reasonable compliance procedures.  <u>See</u> <u>Levine</u>, 554 F.3d at 1319 ("Because it was not objectively unreasonable to read the Act as allowing the sale of a report for a closed account, no investigation or procedure would have alerted Experian to the possibility of an impermissible use.  Any dearth of reasonable compliance procedures cannot give rise to a willful violation of the Act.").  Accordingly, Experian is entitled to summary judgment on Plaintiff's claim that Experian willfully violated § 1681e(a) of the FCRA.

### ii.    Willful Violations of the CCRAA

The text of § 1785.11(a)(3)(A) of the CCRAA is substantially similar to the text of § 1681b(a)(3)(A) of the FCRA.  It provides that "[a] consumer credit reporting agency shall furnish a consumer credit report only under the following circumstances: . . . [t]o a person whom it has reason to believe . . . [i]ntends to use the information in connection with a credit transaction . . . involving the consumer as to whom the information is to be furnished and involving the extension of credit to, *or review . . . of an account* of, the consumer. . . ." Cal. Civ. Code § 1785.11(a) (emphasis added).

1
2
3
4
5
6
7

Here, Plaintiff has not proffered any authority or legal analysis demonstrating that Experian willfully violated the CCRAA by providing her credit report to former creditors for account review purposes.  Given the similarity between § 1681b(a)(3)(A) of the FCRA and § 1785.11(a)(3)(A) of the CCRAA, and because judicial interpretation of the FCRA is persuasive authority and entitled to substantial weight when interpreting the CCRAA, Carvalho, 629 F.3d at 889, the Court finds that Experian is entitled to summary judgment on this claim for the reasons stated above.

8
9
10
11
12
13
14
15
16
17
18
19

In addition, Experian is entitled to summary judgment on this claim because Plaintiff has failed to adduce any evidence demonstrating that she suffered actual damages from the willful and wrongful distribution of her credit report.  See Trujillo v. First American Registry, Inc., 157 Cal.App.4th 628, 637-639 (2007) (affirming summary adjudication on CCRAA claim where plaintiffs failed to raise a triable issue as to whether they suffered any damages; absent actual damages, a CCRAA claim fails as a matter of law).  In its motion papers, Experian contends that summary judgment is appropriate because Plaintiff cannot show that she has suffered any actual damages caused by Experian.  Def.'s Mtn. at 14-15. In response, Plaintiff has not cited any evidence raising a genuine dispute as to whether Experian's conduct resulted in actual damages.  Instead, Plaintiff argues that the allegations in the FAC are sufficient to withstand Experian's motion for summary judgment.  Pl.'s Opp. at 14-15.  The Court disagrees.

20
21
22
23
24
25
26
27
28

Experian has met its initial burden on summary judgment by pointing out through argument that Plaintiff does not have evidence that she suffered any actual damages.  See Celotex, 477 U.S. at 325; Devereaux, 263 F.3d at 1076; Fairbank, 212 F.3d at 532.  By simply relying on the allegations in the FAC, Plaintiff has failed to sustain her burden to designate specific facts showing that a genuine dispute exists for trial on the issue of whether Experian's conduct resulted in actual damages.  Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

### iii.   Negligent Violations of the FCRA and the CCRAA

The Court finds that summary judgment in favor of Experian is appropriate on Plaintiff's claims for negligent violations of the FCRA and the CCRAA.  As discussed above, Plaintiff has not adduced any competent evidence of actual damages, and therefore has failed to raise a genuine dispute for trial as to whether Experian's conduct resulted in actual damages.  Accordingly, summary judgment in favor of Experian is appropriate on Plaintiff's claim for negligent violations of the FCRA.  Weinberg v. Whatcom Cnty., 241 F.3d 746, 751-752 (9th Cir. 2001) (affirming summary judgment where plaintiff "failed to offer competent evidence of damages" for a claim in which plaintiff "bore the burden of establishing the amount of actual harm"); see Banga, 473 Fed.Appx. 699 ("The district court properly granted summary judgment on Banga's claims for negligent violations under § 1681o of the Act because she failed to raise a triable dispute as to whether defendants' conduct resulted in actual damages.").  Likewise, summary judgment in favor of Experian is appropriate on Plaintiff's claim for negligent violations of the CCRAA.  See Trujillo, 157 Cal.App.4th at 637-639 (absent actual damages, a CCRAA claim fails as a matter of law).

### b.   Experian's Willful Misuse of Plaintiff's Consumer Credit File Data

Plaintiff's second claim for relief alleges that Experian willfully violated the FCRA and the CCRAA by failing to keep a record of all inquiries into her credit file, and by improperly making inquiries into her credit file and misusing the credit file data contained in her credit report on various dates in 2006, 2007, 2008, and 2009.  FAC ¶¶ 37-40.  Experian contends that this claim fails as a matter of law because Plaintiff has no evidence that her credit report was provided to a third-party for an impermissible purpose on the dates alleged in the FAC.  Def.'s Mtn. at 12.  According to Experian, on each of the relevant dates, "internal activities were captured internally for Experian's records and were not disclosed to any third party."  Id. (citing Centanni Decl. ¶ 21 (stating that the inquiries referred to by Plaintiff can be associated to one of the following processes which are only performed by trained Experian employee(s): "system diagnostic testing, consumer

complaint research, preparation for consumer litigation, response to subpoenas and discovery requests, resolution of a consumer lawsuit to ensure accuracy of information and system maintenance performed by specific departments within Experian")).

The Court finds that summary judgment in favor of Experian is appropriate on Plaintiff's claim for willful misuse of her consumer credit file data. The evidence before the Court demonstrates that Experian internally accessed Plaintiff's credit file on the dates in question, and that the type of inquiries conducted by Experian were not disclosed to any third-party and did not affect Plaintiff's credit score. Centanni Decl. ¶¶ 21-25. Plaintiff has not cited any evidence or authority demonstrating that summary judgment is inappropriate.

As for the FCRA, neither the FAC nor Plaintiff's opposition identifies any section of the FCRA that Experian allegedly violated in connection with this claim. The Court notes that § 1681g of the FCRA requires a consumer reporting agency to clearly and accurately disclose to the consumer the identity of each person (including each "end-user") that procured a report "for employment purposes, during the 2-year period preceding the date on which the request is made; or for any other purpose, during the 1-year period preceding the date on which the request is made." 15 U.S.C. § 1681g(a)(3)(A). To the extent Plaintiff's second claim for relief can be construed as alleging that Experian violated this section of the FCRA, it fails as a matter of law. The plain language of the statute does not require a consumer credit reporting agency such as Experian to disclose to a consumer the internal inquiries it conducted into the consumer's credit file. Rather, this statute requires a consumer credit reporting agency to, among other things, disclose to a consumer the identity of any third-party that obtained the consumer's credit report within the one-year period prior to the date on which the consumer submitted a request for such information.

As for the CCRAA, Plaintiff asserts, without elaboration or analysis, that Experian violated § 1785.15 by willfully failing to keep a record of all inquiries by Experian into her credit report. Pl.'s Opp. at 11. In support of her position, Plaintiff cites § 1785.15(a)(3) and § 1785.15(a)(4). Id. at 11 n. 1. The CCRAA provides, in relevant part, as follows:

(a) A consumer credit reporting agency shall supply files and information required under Section 1785.10 during normal business hours and on reasonable notice.  In addition to the disclosure provided by this chapter and any disclosures received by the consumer, the consumer has the right to request and receive all of the following:

. . . .

(3) A record of all inquiries, by recipient, that result in the provision of information concerning the consumer in connection with a credit transaction not initiated by the consumer and that were received by the consumer credit reporting agency in the 12-month period immediately preceding the request for disclosure under this section.

(4) The recipients, including end users specified in Section 1785.22, of any consumer credit report on the consumer which the consumer credit reporting agency has furnished:

(A) For employment purposes within the two-year period preceding the request.

(B) For any other purpose within the 12-month period preceding the request.

Cal. Civ. Code § 1785.15(a)(3), (4).

Here, it is undisputed that the relevant inquiries into Plaintiff's credit file that provide the basis for Plaintiff's second claim for relief were made by Experian.  See Pl.'s Opp. at 11; FAC ¶¶ 38-39.  Plaintiff has not proffered any evidence, decisional authority, or legal analysis showing that Experian violated § 1785.15.  Moreover, the plain language of the statute demonstrates that the provisions relied upon by Plaintiff do not apply to the inquiries at issue in this case.

The text of § 1785.15(a)(3) requires a consumer reporting agency such as Experian to provide a consumer a record of all inquiries into their credit report, by recipient, that "result in the provision of information concerning the consumer in connection with a credit transaction not initiated by the consumer."  The agency must provide such information for the 12-month period immediately preceding the request for disclosure.  This section clearly does not apply to internal inquiries into a consumer's credit file conducted by a consumer reporting agency such as Experian.  Rather, it applies to inquiries by third parties that result in the delivery of information by a consumer reporting agency to such parties "concerning the consumer in connection with a credit transaction not initiated by the consumer."

1   Likewise, § 1785.15(a)(4) does not apply to Experian's internal inquiries into

2   Plaintiff's credit file.  That section requires a consumer reporting agency to, among other

3   things, disclose to a consumer the identity of any third-party that has received the

4   consumer's credit report for any purpose within the 12-month period preceding the request

5   for disclosure.  Section 1785.15(a)(4) does not require Experian to disclose to Plaintiff the

6   internal inquiries it conducted into her credit file.[4]

7   The Court notes that the FCRA and the CCRAA provide that whenever a credit

8   reporting agency prepares a consumer credit report, "it shall follow reasonable procedures

9   to assure maximum possible accuracy of the information concerning the individual about

10  whom the report relates."  See 15 U.S.C. § 1681e(b); Cal. Civ. Code § 1785.14(b).  To the

11  extent Plaintiff's second claim for relief can be construed as alleging a violation of §

12  1681e(b) and/or § 1785.14(b), Plaintiff has failed to cite evidence establishing that

13  Experian prepared a credit report containing inaccurate information about her in violation

14  of the FCRA or CCRAA.  See Guimond, 45 F.3d at 1333 (to make out a prima facie

15  violation under § 1681e(b), a consumer must present evidence tending to show that a

16  consumer reporting agency prepared a report containing inaccurate information).

17  Finally, to the extent Plaintiff attempts to broaden the scope of her second claim for

18  relief by arguing for the first time that Experian violated the CCRAA by failing to disclose

19  inquiries made by First USA into her credit file on various dates in 2004 and 2005, the

20  Court finds this improper.  Rather than including these allegations in the FAC, Plaintiff has

21  raised them in her opposition to the instant motion.  Because these allegations are not in the

22  FAC, they are not properly before the Court.  Moreover, even if the Court were to construe

23  Plaintiff's argument as a motion for leave to amend the FAC, the Court finds that good

24  cause does not exist to grant leave to amend.

25

26  _____

27  [4] Plaintiff's second claim for relief under the CCRAA also fails as a matter of law because Plaintiff has not adduced any evidence showing that she suffered actual damages as a result of Experian's conduct.  See Trujillo, 157 Cal.App.4th at 637-639 (absent actual

28  damages, a CCRAA claim fails as a matter of law).

Rule 15(a) of the Federal Rules of Civil Procedure generally governs amendments to pleadings.  However, because the deadline for amending pleadings set forth in the Court's pretrial scheduling order has expired, Plaintiff must show good cause for amendment under Rule 16(b) of the Federal Rules of Civil Procedure.  See Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992).  This standard "primarily considers the diligence of the party seeking the amendment."  Id. at 609.  If the party seeking to modify the pretrial scheduling order was not diligent, "the inquiry should end."  Id.  Here, Plaintiff admits that she learned in May and June 2009 that Experian had failed to include in her credit report First USA's inquiries into her credit file in 2004 and 2005.  Pl.'s Opp. at 13.  Despite knowledge of Experian's allegedly unlawful conduct since 2009, Plaintiff failed to raise this issue until July 30, 2013.  Thus, even if the Court were inclined to construe Plaintiff's argument in her opposition as a request for leave to amend the FAC, Plaintiff has not acted diligently in seeking leave to amend.  Moreover, to allow Plaintiff to amend the FAC at this late juncture - more than three-and-a-half years after the commencement of the instant action and after discovery has closed - would be unfairly prejudicial to Experian.  See Johnson, 975 F.2d at 609 (the existence of prejudice to a party might supply an additional reason to deny a motion to modify the pretrial scheduling order).

### c.   Experian's Willful/Negligent Sale of Plaintiff's Credit Report for Promotional Purposes

Plaintiff's third claim for relief alleges that Experian willfully and/or negligently sold her credit report for promotional purposes to LowerMyBills.com in violation of the FCRA and CCRAA after she elected to be permanently excluded from all "pre-approved credit offers mailing lists by credit grantors."  See FAC ¶¶ 42-46.  Experian contends that summary judgment is appropriate because Plaintiff has no evidence that Experian sold her credit report for promotional purposes after she elected to opt-out of receiving pre-screened offers of credit.  Def.'s Mtn. at 13.  Experian argues that Plaintiff cannot adduce evidence that she received any pre-approved offers of credit from mailing lists compiled by Experian.  Id.  According to Experian, there have been no inquiries into Plaintiff's credit

file reflecting any pre-screened offers of credit after she opted-out of receiving such offers in June 2003.  Id. (citing Centanni Decl. ¶ 26, Exhs. 1-7).

Further, Experian argues that while Plaintiff's credit file contains an inquiry with a purpose code listed as a pre-qualified consent offer of credit from LowerMyBills.com, her claim that Experian impermissibly sold her credit information fails because this type of inquiry is initiated by a consumer at the consumer's request, not by Experian or any of its subscribers.  Def.'s Mtn. at 13 (citing Centanni Decl. ¶ 27, Exh. 3).  Moreover, Experian argues that because it "post[s] prequalification inquiries as soft inquiries," the inquiry is not provided to creditors, and therefore could not have affected Plaintiff's credit score.  See Centanni Decl., ¶ 12, Dkt. 110-2.

Congress amended the FCRA in 1996 to permit creditors to purchase pre-screened lists of consumers who meet the creditor's specific criteria without the consumers' consent as long as the purchaser intends to give the consumer a "firm offer of credit."[5]  Poehl v. Countrywide Home Loans, 528 F.3d 1093, 1096 (8th Cir. 2008).  Creditors interested in extending firm offers of credit provide the credit reporting agency with their credit specifications and the agency generates a list of consumers who meet that criteria based on information contained in their credit reports.  Id.

The Fifth Circuit has explained the process by which prospective creditors may obtain and use information under the FCRA:

> In the pre-screening process, credit reporting agencies compile lists of customers who meet specific criteria provided by the creditor, and then provide the lists to a creditor, who uses the lists to solicit customers with firm offers for credit in the form of pre-approved offers of credit.  To access more detailed information to determine whether the consumer meets a creditor's specific criteria bearing on credit worthiness, a creditor must obtain a consumer's authorization.  Thus, acceptance of a pre-approved offer of credit typically requires the consumer's agreement to permit the creditor to access the consumer's credit information.  If a consumer responds to a pre-approved

---

[5] The term "firm offer of credit" is "any offer of credit or insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer."  15 U.S.C. § 1681a(l).  A firm offer may be conditioned on specific criteria bearing on credit worthiness that are established prior to selection of the consumer for the offer for the purpose of determining whether to extend credit.  Id.

offer of credit, and authorizes the creditor to access the consumer's credit report, the creditor may then access the consumer's credit report to determine whether the consumer satisfies its previously-established for credit worthiness. As a result, the Act permits a creditor to make a "conditional" firm offer of credit; that is, an offer that is conditioned on the consumer meeting the creditor's previously-established criteria for extending credit.

Kennedy v. Chase Manhattan Bank, USA, 369 F.3d 833, 841 (5th Cir. 2004).

Section 1681b(a) of the FCRA provides that, subject to § 1681b(c), a consumer reporting agency may only furnish a consumer's credit report under six enumerated circumstances. 15 U.S.C. § 1681b(a). As relevant to this claim, a consumer reporting agency may provide a report "[t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer. . . ." 15 U.S.C. § 1681b(a)(3)(A).

Section 1681b(c)(1), in turn, provides, in relevant part, that:

A consumer reporting agency may furnish a consumer report relating to any consumer pursuant to subparagraph (A) or (C) of subsection (a)(3) of this section in connection with any credit or insurance transaction that is not initiated by the consumer only if--

(A) the consumer authorizes the agency to provide such report to such person; or

(B)(i) the transaction consists of a firm offer of credit or insurance;

(ii) the consumer reporting agency has complied with subsection (e) of this section;

(iii) there is not in effect an election by the consumer, made in accordance with subsection (e) of this section, to have the consumer's name and address excluded from lists of names provided by the agency pursuant to this paragraph. . . .

15 U.S.C. § 1681b(c)(1).

Section 1681b(e) provides that "[a] consumer may elect to have the consumer's name and address excluded from any list provided by a consumer reporting agency under subsection (c)(1)(B) of this section in connection with a credit or insurance transaction that is not initiated by the consumer, by notifying the agency . . . that the consumer does not consent to any use of a consumer report relating to the consumer in connection with any

credit or insurance transaction that is not initiated by the consumer."  15 U.S.C. § 1681b(e)(1).[6]

The Court finds that summary judgment in favor of Experian is appropriate. Experian has met its initial burden on summary judgment by pointing out through argument that Plaintiff does not have evidence demonstrating a willful or negligent violation of the FCRA or CCRAA, or that she suffered any actual damages as a result of Experian's conduct.  See Celotex, 477 U.S. at 325; Devereaux, 263 F.3d at 1076; Fairbank, 212 F.3d at 532.  In response, Plaintiff has failed to adduce affirmative evidence from which a jury could reasonably render a verdict in her favor on this claim.  Anderson, 477 U.S. at 252, 257.  Specifically, Plaintiff has not cited any evidence showing that she received any pre-approved offers of credit based on mailing lists generated by Experian.  Nor has Plaintiff cited any evidence showing that Experian impermissibly sold her credit report to LowerMyBills.com. after she elected to opt out of pre-screened offers of credit.

Plaintiff asserts that because an inquiry initiated by a consumer for an extension of credit is considered a "hard inquiry," and because the inquiry in question appeared in Experian's records as a "soft" inquiry, "then it follows that Plaintiff had not initiated a request for credit with LowerMyBills."  Pl.'s Opp. at 13.  In support of her position, Plaintiff cites to Paragraph 8 of Centanni's declaration, id. which states that there are two "general" types of inquiries: (1) those resulting in actions initiated by the consumer, such as an application or inquiry for extension of credit, which are displayed on credit reports to third parties (often referred to as "hard" inquiries); and (2) those not initiated by a consumer, such as account reviews and pre-screen inquires (often referred to as "soft" inquires).  Centanni Decl. ¶ 8.

---

[6] Section 1785.11.8 of the CCRAA provides:

A consumer may elect that his or her name shall be removed from any list that a consumer credit reporting agency furnishes for credit card solicitations, by notifying the consumer credit reporting agency, by telephone or in writing, pursuant to the notification system maintained by the consumer credit reporting agency pursuant to subdivision (d) of Section 1785.11.  The election shall be effective for a minimum of two years, unless otherwise specified by the consumer.

Contrary to Plaintiff's contention, Paragraph 8 of Centanni's declaration does not demonstrate that Plaintiff did not to initiate a request for credit with LowerMyBills.com. Centanni avers that a "soft inquiry" is "generally" the result of when a third party [accesses] a consumer's credit file for a permissible purpose which is not directly initiated by the consumer."  Centanni Decl. ¶ 10.  She further avers that the inquiry at issue - a pre-qualified consent offer of credit - is a type of inquiry initiated at the consumer's request, and that it is Experian's business practice to post pre-qualification inquiries as "soft" inquiries. See Centanni Decl. ¶ 12, Dkt. 110-2.  Indeed, in the pre-screening process, a creditor must typically obtain a consumer's authorization to access their credit report to determine whether he/she satisfies the creditor's previously established specific criteria bearing on credit worthiness.  Kennedy, 369 F.3d at 841.  Plaintiff has not cited any evidence showing that a genuine dispute for trial exists on the issue of whether she initiated a request for credit with LowerMyBills.com.  As such, Plaintiff has failed to make a sufficient showing to withstand Experian's motion for summary judgment.

Furthermore, absent competent evidence of actual damages raising a genuine dispute for trial, summary judgment in favor of Experian is appropriate on Plaintiff's claim that Experian negligently violated the FCRA, see Weinberg, 241 F.3d at 751-752, and her claim that Experian willfully and/or negligently violated the CCRAA.  Trujillo, 157 Cal.App.4th at 637-639.

### 3.    Res Judicata

Experian contends that Plaintiff's claims are barred by the doctrine of res judicata. Def.'s Mtn. at 16-22; Def.'s Reply at 5-6.  Res judicata encompasses two subsidiary doctrines, claim preclusion and issue preclusion.  Americana Fabrics, Inc. v. L & L Textiles, Inc., 754 F.2d 1524, 1529 (9th Cir. 1985).  Claim preclusion precludes relitigation of claims that were raised or should have been raised in earlier litigation.  San Remo Hotel L.P. v. San Francisco City and County, 364 F.3d 1088, 1094 (9th Cir. 2004).  Issue preclusion, on the other hand, forecloses relitigation of factual or legal issues that have been actually and necessarily decided in earlier litigation.  Id.  By precluding parties from

1    contesting matters that they have had a full and fair opportunity to litigate, these two

2    doctrines protect against the expense and vexation attending multiple lawsuits, conserve

3    judicial resources, and foster reliance on judicial action by minimizing the possibility of

4    inconsistent decisions.  Montana v. United States, 440 U.S. 147, 153-154 (1979).

5                            **a.      Claim Preclusion**

6            Under the doctrine of claim preclusion, a final judgment on the merits bars further

7    claims by parties or their privies based on the same cause of action.  Headwaters Inc. v.

8    U.S. Forest Serv., 399 F.3d 1047, 1051 (9th Cir. 2005).  The elements necessary to

9    establish claim preclusion are: (1) an identity of claims, (2) a final judgment on the merits,

10   and (3) privity between the parties.  See id.

11          Here, all three requirements for claim preclusion are met.  First, the parties in the

12   instant action and the earlier filed action, Banga v. Experian Information Solutions, et al., C

13   08-04147-SBA, are identical.  Second, the first action resulted in a final judgment on the

14   merits.  The Court granted summary judgment in favor of Experian in the earlier action on

15   March 17, 2010.  Def.'s RJN, Exh. F.  On May 24, 2012, the Ninth Circuit affirmed the

16   Court's summary judgment order.  See Banga, 473 Fed.Appx. 699.  Third, there is an

17   identity of claims in the two actions.

18          Except as noted below, Plaintiff's claims in the instant action are barred by claim

19   preclusion because they arise from the same "transactional nucleus of facts" as the claims

20   alleged in Plaintiff's earlier action.  Frank v. United Airlines, Inc., 216 F.3d 845, 851 (9th

21   Cir. 2000)  ("The central criterion in determining whether there is an identity of claims

22   between the first and second adjudications is 'whether the two suits arise out of the same

23   transactional nucleus of facts.' ").  "[I]n most res judicata cases, the inquiry about the 'same

24   transactional nucleus of facts' is the same inquiry as whether the claim could have been

25   brought in the previous action.  If the harm arose at the same time, then there was no reason

26   why the plaintiff could not have brought the claim in the first action."  United States v.

27   Liquidators of European Fed. Credit Bank, 630 F.3d 1139, 1151 (9th Cir. 2011); see also

28   Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1078 (9th

Cir. 2003) ("Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.").  Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action; it is immaterial whether the claims asserted after the judgment were actually pursued in the action that led to the judgment.  Tahoe-Sierra Pres. Council, 322 F.3d at 1078.

In both the instant action and the action filed by Plaintiff in 2008, Plaintiff brought claims against Experian for impermissibly providing former creditors access to her credit report for "account review" purposes, and for impermissibly selling her credit report for promotional purposes after Plaintiff opted out of receiving pre-approved offers of credit. While the first claim in the instant action alleges that Experian impermissibly distributed Plaintiff's credit report during a shorter time period than alleged in the earlier filed action, the distributions alleged in this action are clearly within the same time frame and coterminous with the distributions alleged in the earlier action, and therefore could have been alleged in that action.[7]  Likewise, Plaintiff's second claim for willful misuse of her consumer credit file data,[8] and her third claim for willful/negligent sale of her credit report for promotional purposes in December 2008, could have been alleged in the earlier filed action.  Accordingly, the Court finds that there is an identity of claims.

---

[7] In support of her first claim for relief, Plaintiff alleges that she learned on May 29, 2009 and June 4, 2009 that Experian impermissibly provided her credit report to First USA Bank on numerous dates from August 2004 to December 2007 for "account reviews or some unknown purposes."  See FAC ¶¶ 9, 19-32.  In the earlier filed action, Plaintiff alleged that Experian impermissibly provided Plaintiff's creditor report to creditors for account review purposes on various dates in 2002, 2003, 2004, 2005, 2006, 2007, and 2008.  See Def.'s RJN, Exh. D.

[8] In support of her second claim for relief, Plaintiff alleges that documents produced by Experian in May 29, 2009 and June 4, 2009 show that Experian had improperly made inquiries into her credit file and misused the credit file data contained in her credit report on various dates in 2006, 2007, 2008, and 2009.  FAC ¶ 38.  Plaintiff further alleges that credit reports received from Experian in August 2007, February 2008 and March 2009 do not include inquiries Experian conducted into her credit file on various dates in 2007, 2008, and 2009.  Id. ¶ 39.

The Court notes that Plaintiff's first claim for relief is predicated in part on her discovery on October 20, 2010 that Experian had impermissibly provided her credit report to American Express for an account review or "unknown purposes" on August 15, 2009. FAC ¶¶ 12, 33.  This claim is also predicated in part on her discovery on July 4, 2012 that Experian had impermissibly provided her credit report to American Express for an account review or "unknown purposes" on June 30, 2012.  Id. ¶¶ 13, 34.  To the extent claims based on these allegations could not have been brought in the earlier action,[9] they are not barred by the doctrine of claim preclusion.  However, as discussed below, any claim based on these allegations is barred by the doctrine of issue preclusion.

### b.    Issue Preclusion

The preclusive effect of a federal-court judgment is determined by federal common law when, as here, subject matter jurisdiction in the prior case is based on federal question rather than diversity.  Taylor v. Sturgell, 553 U.S. 880, 891 (2008).  "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."  Id. at 892.  To apply issue preclusion, the following elements are required: (1) a full and fair opportunity to litigate the issue in the prior action; (2) the issue was actually litigated; (3) a final judgment resulted; and (4) the person against who preclusion is asserted was a party to the prior action.  In re Palmer, 207 F.3d 566, 568 (9th Cir. 2000).

In the earlier action filed by Plaintiff against Experian in 2008, the Court granted summary judgment in favor or Experian.  Specifically, the Court determined that a consumer reporting agency such as Experian does not willfully or negligently violate the FCRA or CCRAA as a matter of law by furnishing a consumer's credit report to a creditor

---

[9] The discovery cut-off in the earlier filed action was June 26, 2009.  See Banga v. Experian Information Solutions, et al., C 08-4147-SBA, Dkt. 32.  Thus, Plaintiff could not have learned through discovery in the earlier filed action that Experian had allegedly impermissibly provided her credit report to American Express on August 15, 2009 and June 30, 2012.

for account review purposes after the consumer's account with that creditor has been closed.  Def.'s RJN, Exh. F.  This is the exact issue that Plaintiff seeks to litigate in this action with respect to her first claim for relief.  Accordingly, Plaintiff's first claim for relief is barred by the doctrine of issue preclusion.

As for Plaintiff's second and third claims for relief, Experian has not sustained its burden to show that these claims are barred by the doctrine of issue preclusion.  Experian has not identified any factual or legal issue regarding these claims that was actually litigated and necessarily decided in the prior action against Plaintiff that she seeks to relitigate in this action.  Indeed, Experian does not offer any legal analysis demonstrating that Plaintiff's second and third claims are barred by the doctrine of issue preclusion.  It is not the role of the Court to make the parties' arguments for them.  See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.").  Moreover, a review of the Court's summary judgment order in the 2008 case does not reveal that Plaintiff's second or third claims for relief seek to relitigate a specific legal or factual issue that was actually litigated and necessarily decided against Plaintiff in that action.

## III.   **CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1.      Experian's motion for summary judgment is GRANTED.  Summary judgment is granted in favor of Experian on the merits with respect to claims one, two, and three alleged in the FAC.  Experian has shown that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.  In addition, Experian is entitled to summary judgment on claims one, two, and three alleged in the FAC pursuant to the doctrine of res judicata.  The doctrine of claim preclusion bars Plaintiff's first claim for relief in part and bars Plaintiff's second and third claims for relief in their entirety.  The doctrine of issue preclusion bars Plaintiff's first claim for relief in its entirety.

2.      This Order terminates Docket 91 and Docket 117.

3.      The Clerk shall close the file and terminate all pending matters.

1    IT IS SO ORDERED.

2    Dated:  9/30/2013                          _____
                                                SAUNDRA BROWN ARMSTRONG
3                                               United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28